UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS ARTHUR SARNOWSKI, II
and MEGAN SARNOWSKI

       Plaintiff,

v.                                                  Civil Case No. 21-11224
                                                  Honorable Linda V. Parker

CITY OF WYANDOTTE *et al.*,

       Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 30) AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 32)

This is a civil rights action pursuant to 42 U.S.C. § 1983 arising out of a police seizure of two mixed-breed pit pulls after the dogs attacked and killed a neighbor's dog and injured the neighbor. On May 25, 2021, Thomas Arthur Sarnowski, II, and his wife, Megan Sarnowski ("Plaintiffs"), filed a Complaint in this District against the city of Wyandotte, Michigan, 27th District Court Judge Elizabeth DiSanto, Wyandotte Police Chief Brian Zalewski, Wyandotte Police Detective Devin Geiger, Wyandotte Police Detective Joseph Carr, and Downriver Central Animal Control Officer Charles Gillenwater (collectively, "Defendants"). (ECF No. 1.) On March 12, 2022, Plaintiffs filed a First Amended Complaint alleging the following claims: violation of the Fourth Amendment of the U.S.

Constitution (Count I); violation of the Fourteenth Amendment of the U.S. Constitution (Count II); municipal liability against the city of Wyandotte under the *Monell* doctrine (Count III); declaratory and injunctive relief (Count IV); and conversion pursuant to Michigan law (Count V).  (ECF No. 21.)

The matters are presently before the Court on "Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56," filed on November 14, 2022, ECF No. 30, and "Plaintiffs' Motion for Summary Judgment Under Fed. R. Civ. P. 56," filed on November 14, 2022, ECF No. 32.  The motions are fully briefed. (ECF Nos. 35, 37, 38, 40)  Finding the facts and legal arguments sufficiently presented by the parties, the Court is dispensing with oral argument with respect to the parties' motions pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court grants Defendants' motion.

## I. STATEMENT OF FACTS

As an initial matter, Plaintiffs do not provide any facts leading up to the seizure of the dogs in the First Amended Complaint.  Because the Defendants' present motion provides necessary information for this Court's determination, and because the parties do not appear to dispute these pre-seizure facts, *see* ECF Nos. 30, 35, 37, 38, 40, the Court will rely on them to make a complete record.

*October 2017 Incident Involving Plaintiff's Dogs*

Plaintiffs owned two dogs: Zoe and Bruce. On October 26, 2017, the dogs fought each other, which ended in Bruce biting Zoe and puncturing the top and bottom of Zoe's head. (Ex. A, T. Sarnowski Depo. ECF No. 30-2 at Pg ID 307–09; Ex. C, Vet Recs., ECF No. 30-4 at Pg ID 374.) Zoe's injuries required an emergency visit to the veterinarian and included sutures and a stent to drain excess fluid. (*Id.*) In addition to treating Zoe's wounds, the vet made the following assessment about the dogs: "Recommend to have professional help to prevent further issues" due to the "recurrent nature of the bites." (ECF No. 30-4 at Pg ID 374.)

The next day, Mrs. Sarnowski posted pictures of Zoe's injuries on Facebook, and Mr. Sarnowski commented that "[Zoe] got into a fight with our other dog Bruce. We Don't know what started it." (Ex. D., 10/27/17 Facebook Post, ECF No. 30-5 at Pg ID 381.) On November 13, 2017, Megan posted a new message on Facebook:

> I have to find a new home for my Bruce. Reason being, he got into a fight with our other dog and it was bad. He didn't start it but he did finish it, and seeing as we've had our other dog since she was a pup we have to find him a good home. Its better for the both of them . . . .

(Ex. E, 11/13/17 Facebook Post, ECF No. 30-6 at Pg ID 393.)

*May 2018 Incident Involving Plaintiffs' Dogs*

On May 24, 2018, Plaintiffs' dogs broke through the fence and entered the yard of their neighbor, Ms. Deborah Maley. According to the incident report, Ms. Maley stated that the dogs began "biting and chewing" her dog, Charlie, while "shaking him like a rag doll." (Ex. G, ECF No. 30-8 at Pg ID 415.) When Ms. Maley attempted to pick Charlie up off the ground, she was attacked by one of the dogs. Charlie was transported to the hospital where he suffered "severe injuries to his ribs." (*Id.*) After the incident, Officer Gillenwater went to speak with Mr. Sarnowski at his home, who advised Officer Gillenwater that he let the dogs out into his yard, and they immediately ran directly to Ms. Maley's yard. Mr. Sarnowski also admitted that prior to the attacks, he tried to both verbally and physically restrain the dogs but they both broke free and went through the fence. (Ex. A, ECF No. 30-2 at Pg ID 333–35.) Zoe barked, growled, and hovered over Charlie, while Bruce grabbed Charlie and shook him. Mr. Sarnowski crawled through the hole in the fence and grabbed Bruce's tail, which is when Bruce eventually dropped Charlie. According to the incident report, Mr. Sarnowski confirmed that neither dog was vaccinated for rabies, Ex. G, ECF No. 30-8 at Pg ID 415, and according to veterinary records for both dogs, they were delinquent on their vaccinations. (Ex. I., Vet Recs., ECF No. 30-10.) After the incident, Officer

4

Gillenwater told Mr. Sarnowski to quarantine the dogs at home for 10 days.  (Ex. G, ECF No. 30-8 at Pg ID 415.)

<em><u>Subsequent Seizure of Plaintiffs' Dogs</u></em>

On or about June 1, 2018, Wyandotte Police Officer Joel Gray and Defendant Gillenwater served Mr. Sarnowski with an investigative subpoena, which was signed by Defendant Judge DiSanto, "demanding that Plaintiffs immediately turn over their dogs." (ECF No. 37 at Pg ID 1070.)  According to Plaintiffs, the subpoena did not state any time for compliance or time to object to the subpoena.  The subpoena also did not provide the "normal" "statutory and court rule provisions." (*Id.*)  However, Plaintiffs complied and surrendered the dogs.  Once Plaintiffs retained counsel, she attempted to contact Defendant Geiger about returning the dogs but did not receive a response.  On June 6, Plaintiffs' counsel spoke with the city of Wyandotte, who notified Plaintiffs' counsel that Defendant Geiger had an open investigation, the findings would be presented to the prosecutor, and that the dogs would not be released until a warrant is either approved or denied.  (ECF No. 37 at Pg ID 1072.)

On June 18, 2018, Plaintiffs' provided letters to Defendant Zalewski, Defendant Geiger, and Animal Control "informing them of the illegal subpoena, illegal seizure and demand for the dogs." (ECF No. 21 ¶ 58, Pg ID 151.)  The next day, Plaintiffs' counsel went to the 27th District Court and attempted to file a

5

motion for release of the dogs but was refused by a court clerk and notified that there was no pending case. According to Plaintiffs, they were notified by the court that obtaining a subpoena with no court case number but instead using a police report number was the standard practice and procedure. (*Id.* ¶ 59.) In an attempt to be heard on the matter of the dogs, Plaintiffs' counsel went to the 27th District Court but was again told that there was 'no case pending" and that the request to be heard would be considered an ex parte communication. After requesting to speak with a different judge and being refused, Plaintiffs' counsel alleges that she was approached by numerous "armed officers", including Defendant Geiger, and was told that they were within their right to have the subpoena issued. (ECF No. 37 at Pg ID 1070.)

On June 22, 2018, Defendant Geiger prepared a summons and complaint and served the documents by posting it on Plaintiffs' door at their home. According to Defendant Geiger's testimony, he filled out the complaint but did not file it with the court. (Ex. 4, Geiger Dep., ECF No. 32-5 Pg ID 722–24.)

On June 25, 2018, the prosecutor brought criminal charges against Plaintiffs for having a dangerous animal and causing injuries. On June 26, 2018, Defendant Geiger presented a new investigative subpoena to 27th District Judge Kalmbach seeking complete veterinary records for Plaintiffs' dogs. (Ex. R, ECF No. 30-19 at Pg ID 560.) On June 28, 2016, Defendant Geiger presented a subpoena to Judge

6

Kalmbach for Zoe's records regarding the October 2017 attack by Bruce. (Ex. S, ECF No. 30-20 at Pg ID 562.) Defendants admit that these subpoenas were never served on Plaintiffs. (ECF No. 30 at Pg ID 263–64.)

Mr. Sarnowski subsequently pled *nolo contendere* to a lesser charge of owning a dangerous animal causing injury, and as part of the plea agreement, the prosecutor dropped the charges against Mrs. Sarnowski. On July 27, 2018, the 27th District Court ordered the dogs released back to Plaintiffs. Shortly after the dogs were returned, Plaintiffs allege that Zoe died due to an intestinal parasite from being housed at the animal shelter.

## II.  LEGAL STANDARD

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry when evaluating a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).  To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient.  *See Liberty Lobby*, 477 U.S. at 252.  The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor.  *Id.* at 255.

### III.  ANALYSIS

### **Defendants' Motion For Summary Judgment**

As an initial matter, Plaintiffs have failed to respond to numerous claims in Defendants' motion for summary judgment: (1) Defendant Zalewski and Defendant Carr are entitled to qualified immunity on the Section 1983 claims, *see id.* at Pg ID 269–71; (2) that the common law conversion claims fail on the merits, *see id.* at Pg ID 284–85; and (3) Plaintiffs are not entitled to any injunctive or declaratory relief, *see id.* at Pg ID 278–80.  The Sixth Circuit is clear that "a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.*, 545 F.

App'x 368, 372 (6th Cir. 2013) (collecting cases); *Hua v. Home Depot U.S.A., Inc.*, 452 F. Supp. 3d 698, 704 (E.D. Mich. 2020) (Hood, J.). Because Plaintiffs failed to respond to Defendants' arguments, the above claims are considered waived. Moreover, in a footnote, Plaintiffs present a short restatement of general allegations against Judge DiSanto but fail to provide any substantive arguments as to Defendants' claim that Judge DiSanto is immune to suit pursuant to the doctrine of judicial immunity, Section 1983, and the Eleventh Amendment. (ECF No. 37 at Pg ID 1088 n.3.) Plaintiffs' "argument" is underdeveloped, which leaves it to the Court to put flesh on the bones of its claims, which it cannot do. *See Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) ("It is insufficient 'for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'"). The claims against Judge DiSanto are also abandoned. As such, the Court dismisses all claims as to Defendants DiSanto, Zalewski, and Carr. Further, as referenced above, Counts IV (declaratory and injunctive relief) and V (conversion) are abandoned and are also dismissed.

### A. Qualified Immunity

Defendants maintain that Defendants Geiger and Gillenwater are entitled to qualified immunity on Plaintiffs Fourth and Fourteenth Amendment claims. "The doctrine of qualified immunity protects government officials from liability for civil

9

damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vanderhoef v. Dixon*, 938 F.3d 271, 276 (6th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* To determine whether qualified immunity attaches to a government official, courts must engage in a two-step analysis: "(1) taken in the light most favorable to the party asserting the injury, do the facts ... show the officer's conduct violated a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011) (brackets and internal quotation marks omitted).

1. Fourth Amendment

The Fourth Amendment protects citizens from "unreasonable searches and seizures." U.S. Const. amend. IV. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). "It is settled in [Michigan] that dogs have value, and are the property of the owner as much as any

10

other animal which one may have or keep." *Smith v. City of Detroit, Michigan*, 751 F. App'x 691, 695 (6th Cir. 2018) (citing *Ten Hopen v. Walker*, 55 N.W. 657, 658 (Mich. 1893)). Thus, this Circuit holds that "a person has a Fourth Amendment right to not have his or her lawfully possessed dog unreasonably seized." *Id.* (citing *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566–67 (6th Cir. 2016)). To determine whether a seizure of a dog is reasonable, "a court must 'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest alleged to justify the intrusion' and determine whether 'the totality of the circumstances justified [the] particular sort of ... seizure.' " *Brown*, 844 F.3d at 568 (citations omitted).

In its motion, Defendants maintain that Plaintiffs' Fourth Amendment rights were not violated because Defendant Gillenwater did not seize the dogs. The Court disagrees. When the government takes and retains someone's animal (property), the individual's right to possess the animal is interfered with, which equates to a seizure under the Fourth Amendment. *See Jacobsen*, 466 U.S. at 113 (1984). Defendants allege that Plaintiffs surrendered their dogs voluntarily, despite Plaintiffs' assertion that Defendant Gillenwater and Officer Gray knocked on the door and served Mr. Sarnowski with the investigatory subpoena and "demand[ed] that Plaintiffs immediately turn over their two dogs." (ECF No. 37 at

11

Pg ID 1070.) Plaintiffs also allege when faced with "two armed officers with an apparent court order," Mr. Sarnowski complied and drove the dogs to the animal shelter "under police escort" and "under duress." (*Id.*) These facts alone demonstrate that it is unlikely that the surrender of the animals was voluntary.

The question the Court must address is whether the taking of the dogs was reasonable. Defendants maintain that there was no violation of Plaintiffs' Fourth Amendment rights because the Wyandotte Ordinance provides a lawful mechanism for Animal Control Officers to quarantine animals who violate Michigan law and the Ordinance itself. The Court agrees. The Wyandotte City Ordinance on its face empowers Animal Control Officers to not only investigate dog bites but if the dog has bitten someone, the dog is required to "be kept in quarantine at the Animal Shelter . . . per the decision of the Animal Control Officer." (Ex. X, ECF No. 30-25 at Pg ID 604.) The Ordinance continues:

> The Chief Animal Control Officer and his or her designees shall promptly investigate all animal bite cases involving human injury and shall search out and attempt to discover the animal involved. If the Chief Animal Control Officer finds the animal responsible for the bite, he or she shall quarantine the animal for examination for disease in accordance with the ***applicable provisions of this chapter and the statutes of the state***.

(*Id.* at Pg ID 606 (emphasis added).)

The Court finds the seizure by Defendants Geiger and Gillenwater was reasonable under the totality of the circumstances. The dogs had a history of

12

aggressive behavior. Bruce and Zoe initially fought each other in October 2017, which led to Zoe's emergency visit to the veterinarian and included sutures and a stent to drain excess fluid. (Ex. C. Vet Recs., ECF No. 30-4 at Pg ID 374.) After being treated, the veterinarian specifically noted that due to the "***recurrent*** nature of the bites[,]" the Plaintiffs should seek "professional help to prevent further issues." (ECF No. 30-4 at Pg ID 374 (emphasis added).) Because of the dogs' aggressive tendencies and likely potential for future harm, Mrs. Sarnowski posted on social media that she would be finding a new home for Bruce. (Ex. E., 11/13/17 Facebook Post, ECF No. 30-6 at Pg ID 393.) Taken as a whole, this evidence shows that Plaintiffs were at least aware that the dogs were aggressive and contemplated the likelihood of a reoccurrence. Despite this knowledge, it appears that Plaintiffs did not, at the very least, seek any form of professional assistance as recommended by the veterinarian.

Next, in May of 2018, the dogs escaped their own yard, broke the fence to enter their neighbor's property, and viciously attacked another dog, which led to the dog's death. Although Mr. Sarnowski attempted to restrain the dogs both verbally and physically, he was ultimately unable to do so. This demonstrates a lack of control that Mr. Sarnowski has over his dogs. To make matters worse, once the neighbor attempted to rescue her dog, she was also attacked by Bruce.

Finally, and probably the most compelling and incontestable piece of evidence as to why the seizure was reasonable, is the fact that the dogs were not up to date on their vaccinations, including rabies. (Ex. G, Incident Rep. ECF No. 30-8 at Pg ID 415; Ex. I, Vet Recs., ECF No. 30-10.) In balancing the interests of the Plaintiffs having their dogs removed and placed in a temporary quarantine, against the government's interest of keeping the community safe from aggressive unvaccinated dogs with a history of attacking each other and third parties, the Court finds the seizure to be reasonable. As such, there was no violation of Plaintiffs' Fourth Amendment rights, and Count I must be dismissed.

2. *Fourteenth Amendment – Procedural Due Process*

Under the Fourteenth Amendment, "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. A deprivation of due process can be separated into two categories: (1) violations of procedural due process; and (2) violations of substantive due process. *See EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012); *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014). Procedural due process "protect[s] persons from deficient procedures that lead to the deprivation of cognizable liberty interests." *Schulkers v. Kammer*, 955 F.3d 520, 545 (6th Cir. 2020) (citations omitted). It "is traditionally viewed as the requirement that the government provide a 'fair procedure' when depriving someone of life, liberty, or property.' "

14

*EJS Props., LLC*, 698 F.3d at 855 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). "To establish a procedural due process violation, [p]laintiffs must show (1) that they have been deprived of a cognizable [property] interest, and (2) that such deprivation occurred without adequate procedural protections." *Golf Vill. N., LLC v. City of Powell*, 14 F.4th 611, 623 (6th Cir. 2021) (quoting *Schulkers*, 955 F.3d at 545).

Although "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner[,]' " *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted), courts must look at the particular situation to determine what level of due process is required. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands.") To determine what level of process is due, courts look to the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

Plaintiffs maintain that their due process rights were violated by the issuance of a "fake" subpoena, complaint, and summons that did not afford them an

15

opportunity to have a hearing to retrieve their dogs during the initial seizure. (ECF No. 21 at Pg ID 159.) However, when the government temporarily seizes a dog in response to a violation of a city ordinance, and does not provide a hearing, there is no automatic violation of due process. *See Cook v. Takacs*, 808 F. App'x 373, 376 (6th Cir. 2020) (applying the balancing test in *Mathews* to conclude that a "temporary seizure and impoundment of [plaintiff's] dog did not violate due process.") In *Cook*, the Sixth Circuit held that although the plaintiff had a substantial interest in his dog, he was not "totally deprived of his property" because the dog was returned after eighteen days. *Id.* The *Cook* court further weighed the government's compelling interest of impounding animals that may be in imminent danger of harm and determined that the risk of "erroneous deprivation was slight," *see id.*, given that the plaintiff received notice of the criminal charges within a short time of the seizure and had opportunity at that point to be meaningfully heard. *Id.* The Court views the instant case as analogous to *Cook*.

Here, Plaintiffs were not completely deprived of their property right to the dogs as the animals were originally only temporarily seized—although not immediately returned in light of the criminal charges—based on a city ordinance. Although one of Plaintiffs' dogs, Zoe, allegedly died after being returned to them, the Sixth Circuit has made it clear that this fact does not give rise to a Fourth Amendment violation; the focus is on the original seizure. *See Hardrick v. City of*

16

*Detroit, Mich.*, 876 F.3d 238, 247 (6th Cir. 2017) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)) (concluding that "the officers did not deprive [the plaintiffs] of property merely because, after the animals entered the pound, they became sick, died, or died after returning home due to alleged unsanitary conditions there. '[N]egligent conduct by a state official, even though causing injury,' does not constitute a deprivation under the Due Process Clause.' ").

Moreover, the Defendants present a strong compelling interest in this process because the dogs were not only a danger to each other but were also an imminent danger to the community due to their aggressive nature and vaccination status. Additionally, once the criminal charges were filed, which was less than 30 days after the dogs were seized and quarantined, Plaintiffs had ample opportunity to be heard. Mr. Sarnowski, similar to the plaintiff in *Cook*, could have pled not guilty and proceeded on the merits. *See Cook*, 808 F. App'x at 376. Rather, Mr. Sarnowski pled *nolo contendere* and voluntarily deprived himself of the opportunity to be heard.

Under such circumstances, the Court finds that there was no violation of Plaintiffs' due process rights. Because Plaintiffs' Fourth and Fourteenth Amendment claims fail, Plaintiffs have not established that Defendants Geiger and Gillenwater have violated any constitutional rights, and as such, they are entitled to qualified immunity.

## B. Municipal Liability Under *Monell*

42 U.S.C. § 1983 creates a federal cause of action against state or local officials who deprive a person of a civil right while acting under color of state law. A municipality is not liable for a civil rights violation simply due to an "injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Id.* at 691; *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 795 (6th Cir. 2005) (citations omitted).

Instead, to prevail in a § 1983 claim against a municipality, the plaintiff must show that the alleged federal violation occurred because of a municipal "policy" or "custom." *Monell*, 436 U.S. at 691. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted). "A 'custom' for purposes of *Monell* liability must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1997) (quoting *Monell*, 436 U.S. at 691). "It must reflect a course of action deliberately chosen from among various alternatives." *Id.* at 508 (citing *City of Okla. v. Tuttle*, 471 U.S. 808, 823 (1985)). Further, the policy or custom

must "be the moving force behind the violation of the plaintiff's constitutional rights." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010)); *see also Monell*, 436 U.S. at 694.

Here, the Court has already concluded that there has been no violation of Plaintiffs' Fourth or Fourteenth Amendment rights. As such, without a violation of a Plaintiffs' constitutional rights, there can be no *Monell* liability as a matter of law. *See Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("[t]here can be no liability under *Monell* without an underlying constitutional violation.").

### Plaintiffs' Motion for Summary Judgment

Because the Court finds no genuine issues of material fact that remain for the jury, Plaintiffs' motion for summary judgment is denied as moot.

### IV. CONCLUSION

For the reasons stated above, even viewing the evidence in a light most favorable to Plaintiffs, the Court finds the following: (1) Plaintiffs abandoned their Section 1983 claims against Defendants DiSanto, Zalewski, and Carr; (2) Plaintiffs abandoned their declaratory and injunctive relief, and conversion claims; (3) Plaintiffs failed to provide sufficient evidence of violations of the Fourth or Fourteenth Amendment, which entitles Defendants Geiger and Gillenwater to

qualified immunity; and (4) Plaintiffs' municipal liability claims under *Monell* fail as a matter of law.  There are no genuine issues of material fact that remain in this lawsuit.

Accordingly,

**IT IS ORDERED**, that "Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (ECF No. 30) is **GRANTED.**

**IT IS FURTHER ORDERED,** that "Plaintiffs' Motion for Summary Judgment Under Fed. R. Civ. P. 56" (ECF No. 32) is **DENIED AS MOOT.**

**SO ORDERED.**

s/ Linda V. Parker<br>LINDA V. PARKER<br>U.S. DISTRICT JUDGE

Dated: August 14, 2023